UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RECEIVED AND FILED
00 OCT 17 AM 8. 30
U.S. DISTRICT COURT
CLERK'S OFFICE
SAN JUAN. P.R.

MAYRA MEJIAS MIRANDA, et. al.,
Plaintiffs,

v.                                      Civ. No. 98-1107 (DRD)

BBII ACQUISITION CORP., et. al.,
Defendants

## OPINION AND ORDER

Pending before the Court are Defendants Motion for Summary Judgment and Motion to Strike. (Docket Nos. 17 and 23). On April 25, 2000, Defendants filed a Motion for Summary Judgment and a Brief in Support of Defendants' Motion for Summary Judgment. (Docket No. 17). Plaintiffs opposed said motion on April 25, 2000. (Docket No. 28). On March 15, 2000, Defendants filed a Motion to Strike. (Docket No. 23). Plaintiffs opposed the Motion to Strike by filing Plaintiffs' Response to Defendants' Motion to Strike and Reply Brief. (Docket No. 30).

For the following reasons, Defendants' Motion for Summary Judgment is **DENIED IN PART** and **GRANTED IN PART**. The Motion to Strike is also disposed of in this opinion and order.[1]

## I. BACKGROUND

On February 6, 1998, Plaintiffs, Mayra Mejias Miranda ("Mejias") and her husband Luis Enrique Mañan Martinez filed the instant complaint against Mejias' employer, Bumble Bee International Inc. ("BBII"), two of its officers, Jose A. Toro ("Toro"), personally and on behalf of the

---

[1] See Footnotes No. 5, 7, and 11.

1

conjugal partnership composed of Elba Ruiz and David Ramos ("Ramos"), personally and on behalf of the conjugal partnership composed of Iraida Granell. (Docket No. 1). The complaint prays for judicial redress "in the form of reinstatement, back/front pay, compensatory and punitive damages, costs and attorneys fees for reason of sex, pregnancy, and medical leave use discrimination under state and federal law." (Docket No. 1).

The following are the relevant facts derived from the complaint and the parties' pleadings examined in the light most favorable to the nonmoving party: Plaintiff, Mayra Mejias Miranda ("Mejias"), was an employee of Defendant Bumble Bee International Inc. ("BBII"). (Docket No. 1). Plaintiff commenced work with BBII approximately on August 29, 1988, as an accountant in the Accounting Department of the corporation. (Docket No. 1). During the year 1995 Plaintiff was promoted to the position of General Accountant Supervisor until her termination. (Docket No. 1). Plaintiff's job performance evaluations described Plaintiff as performing satisfactorily and superiorly. In addition, during the course of her job performance for BBII Plaintiff had never been reprimanded or disciplined. (Docket No. 1). On October 14, 1992, Emigdio Delestre was hired by BBII as an accountant and became Plaintiff's supervisor. (Docket No. 17; Exh. 10, p. 6). As Accounting Manager for BBII, Emigdio Delestre supervised the Accounting Department and was supervised by Ramos. (Docket No. 17; Exh. 10, p. 24).

BBII filed for protection under Chapter II of the Bankruptcy Code on May 2, 1997. (Docket No. 17; Exh. 1, p. 27-28). International Home Foods d/b/a Bumble Bee Acquisitions Corp. acquired BBII while under the protection of Chapter 11. (Docket No. 17; Exh. 1 p. 27-28). Co-defendant Toro, suspecting that BBII's new management would reduce the workforce, as it had in the United States, prepared a list of positions he thought could be terminated from BBII. (Docket No. 17; Exh.

2

11, p. 15-18).  Plaintiff's position was not included in that list.  (Docket No. 17; Exh. 11 p. 15-18).

On July 21, 1997, Evan Metropolous, an International Home Products officer visited the plant and

ordered the elimination of five positions.  (Docket No. 17; Exh. 11, p. 12).  Co-defendant Toro's

original list only contained two positions to be potentially eliminated from the Accounting

Department.  (Docket No. 17; Exh. 11, p. 18).  Therefore, Toro informed Ramos that he had to

recommend three additional positions to be eliminated.  (Docket No. 17; Exh. 11, p. 18-19).  Co-

defendant Ramos recommended that the position of Accounting General, Buyer, two hourly positions

and General Accounting Supervisor (Plaintiff) could be eliminated.  (Docket No. 17; Exh. 11, p.15).

On May 1997, Plaintiff became pregnant after a fertility treatment undergone by the married

couple.  (Docket No. 1).  Said fertility treatment was successful and Plaintiff became pregnant with

twins.  (Docket No. 1).  On July 29, 1997, Plaintiff suffered an episode of vaginal bleeding while at

work.  (Docket No. 1).  After being examined by her physician in the Emergency Room of the Bella

Vista Hospital in Mayaguez, Plaintiff was ordered to rest until August 6, 1997.  (Docket No. 1).

Consequently, Plaintiff's husband delivered a rest certificate to BBII.  (Docket No. 1).  On August 6,

1998, Plaintiff underwent a second physician's evaluation which resulted in the extension of her

resting period until Monday, August 10, 1997.  (Docket No. 1).  Plaintiff then, telephoned

Comptroller Ramos to inform him that her physician had extended her rest until August 10, 1997.

Plaintiffs allege that about a half-an-hour later, Co-defendant Toro communicated via telephone

conversation that as a result of BBII's downsizing, Plaintiff's position had been terminated.  (Docket

No. 1).  It is alleged that Co-defendant Ramos participated in said conversation.  (Docket No. 1).

That same day, Ramos spoke with Plaintiff and informed her that she was entitled to

severance pay, but that BBII would provide payment only if she signed a release form.  (Docket No.

3

1). On August 7, 1997, BBII sent a messenger to Plaintiff's home to deliver a release form for

Plaintiff to sign.[2] (Docket No. 1). To this day, Plaintiff has not signed the release. (Docket No. 1).

Plaintiff alleges that the reason given by BBII for her termination is a pretext to discriminate against

her because of her sex, pregnancy and/or her utilization of medical leave. (Docket No. 1). In

addition, Plaintiffs claim that Plaintiff's termination from her employment is in violation of federal and

state laws and was executed without just cause. (Docket No. 1).

## II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

The function of summary judgment is "to pierce the boilerplate of the pleadings and examine

the parties' proof to determine whether a trial is actually necessary." Vega-Rodriguez v. P.R.T.C.,

110 F.3d 174, 178 (1st Cir. 1997). Accordingly, federal courts will grant summary judgment where

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law." FED. R .CIV. P. 56(c).

To defeat a motion for summary judgment the resisting party will have to show the existence

of "a trial worthy issue as to some material facts." Cortes-Irizarry v. Corporación Insular,111 F.3d

184, 187 (1st Cir. 1997). A fact is deemed "material" if the same "potentially affect[s] the suit's

determination." Garside v. Osco Drug Inc., 895 F.2d 46, 48 (1st Cir. 1990). "An issue concerning

such a fact is 'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable

inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's

favor." Cortes-Irizarry, 111 F.3d at 187. Nonetheless, "speculation and surmise, even when coupled

--------

[2] Under Puerto Rican law payment of severance may constitute an indication of acceptance that the
employer lacked just cause for termination. 29 L.P.R.A. § 285(a). The severance payment may
potentially impede the employer's defense of a valid or legitimate business reason for the termination.

4

with effervescent optimism that something definite will materialize further down the line, are impuissant on the face of a properly documented summary judgment motion." Ayala Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996) (citations omitted)

The movant for summary judgment, of course, must not only show that there is "no genuine issue of material facts," but also, that he is "entitled to judgment as a matter of law." Vega-Rodriguez, 110 F.3d at 178. Further, the court is required to examine the record "drawing all reasonable inferences helpful to the party resisting summary judgment." Cortes-Irizarry. 111 F.3d at 187. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood . . ." Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The facts must be examined under the above criteria because on a potential appeal the appellate court examines "the undisputed facts in the light most congenial to the appellants and adopts their version of any contested facts which are material to our consideration of the issues." Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

Moreover, the test for summary judgment is applied with the highest rigor when a disputed issue turns on a question of motive and intent. "Summary judgment procedures should be used sparingly ... where the issues of motive and intent play leading roles ... It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.'" Poller v. Columbia Broad. Sys., 368 U.S. 470, 473, 82 S.Ct. 486, 491 (1962); cf Pullman-Standard v. Swint, 456 U.S. 273, 288-90, 102 S.Ct. 1781, 1790-1791 (1982) (discriminatory intent is a factual matter for the trier of fact); see also William Coll. v. P.B.

5

Diagnostic Sys., Inc., 50 F.3d 1115, 1121 (1st Cir. 1995); Oliver v. Digital Equip. Corp., 846 F.2d

103, 107 (1st Cir. 1988); Lipsett v. University of P.R., 864 F.2d at 895. "Under such circumstances,

jury judgments about credibility are typically thought to be of special importance." Stepanischen v.

Merchants Despatch Transp. Corp., 722 F.2d 922, 928 (1st Cir. 1983). In Dominguez-Cruz v. Suttle

Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000), the Court recently stated that "determinations of

motive and intent, particularly in discrimination cases, are questions better suited for the jury." Id.

(citing Muler-Rodriguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996). However, "even in cases

where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if

the nonmoving party rests merely upon conclusory allegations, improbable inferences, and

unsupported speculation." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996).

See also Lipsett, 864 F.2d at 895.

Further, pursuant to Local Rule 311.12, the proponent of a summary judgment motion shall

serve and file "annexed to the motion a separate, short, and concise statement of the material facts as

to which the moving party contends there is no genuine issue to be tried and the basis of such

contention as to each material fact, properly supported by specific reference to the record." Local

Rule 311.12. Recently, in Ruiz Rivera v. Riley, 209 F.3d 24, 26 (1st Cir. 2000), the First Circuit

Court of Appeals held that "non compliance [with Local Rule 311.12], as manifested by a failure to

present a statement of disputed facts . . . justifies the court's deeming the facts admitted and ruling

accordingly." Id. The importance of this rule is to "lay [] out the material facts in dispute clearly for

a district court that is swamped with an overwhelming number of civil and criminal dispositive

motions." Dominguez v. Eli Lilly and Co., 958 F.Supp. 721, 727 (D.P.R. 1997). "Without such a

rule, the Court would have to search through the record, with or without the assistance of counsel,

6

for lurking evidence of a genuine issue of material fact. Local Rule 311.12 prevents 'the recurrent problem of ferreting through the record' and 'the specter of district judges being unfairly sandbagged by unadvertised factual issues.'" Id. (quoting Stepanischen v. Merchants Despatch Transport Corp., 722 F.2d 922, 920-31 (1ˢᵗ Cir. 1983). (internal citations omitted)).

## III. DISCUSSION

### A. The Title VII Claim

Title VII proscribes that it is an unlawful act for an employer to discharge an individual because of such individual's sex. See 42 U.S.C. § 2000e-2(a)(1); Vera Lozano v. International Broadcasting, 50 F.3d 67 (1ˢᵗ Cir. 1995). "After the Supreme Court held that this phraseology did not proscribe discrimination on the basis of pregnancy . . . Congress augmented Title VII by enacting the Pregnancy Discrimination Act of 1978 ("PDA"), Pub.L. 95-555, § 1, 92 Stat. 2076 (1978) (codified at 42 U.S.C. § 2000e(k))." Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 420 (1ˢᵗ Cir. 1996). Pursuant to the PDA

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work.

42 U.S.C. § 2000e(k). Therefore, at the time of Plaintiff's discharge from BBII, Title VII's prohibition on gender discrimination also included pregnancy-based discrimination.

In cases were the employee is claiming discrimination on the basis of pregnancy, Plaintiff has the burden of "proving that defendant purposefully terminated her employment because of her pregnancy." Smith, 76 F.3d at 420. However, "[a]bsent the evidentiary equivalent of a 'smoking

7

gun.' the plaintiff must attempt to prove her case by resort to a burden-shifting framework."[3] Id. at

420. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254-56, 101 S.Ct. 1089,

1094-95, 67 L.Ed.2d 668 (1973). Under the McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93

S.Ct. 1817 (1973), "burden shifting framework," Plaintiff can establish a prima facie case of

pregnancy discrimination by showing that (1) she is pregnant (or has communicated an intention to

become pregnant); 2) her job performance has been satisfactory; but 3) nonetheless, the employer

dismissed the person from employment; while 4) a comparably qualified person continued to have her

duties performed. See Smith, 76 F.3d at 421. See e.g. Cumpiano v. Banco Santander de Puerto

Rico, 902 F.2d 148, 152 (1st Cir. 1990); Lipsett v. University of Puerto Rico, 864 F.2d 881, 899 (1st

Cir. 1988).

A rebuttable presumption that discrimination sparked the adverse employment action is

created when a prima facie case is established and imposes a upon the employer the burden of

presenting a legitimate, nondiscriminatory motive for the action. Burdine, 450 U.S. at 254-55, 101

S.Ct. at 1094-95; Lipsett, 864 F.2d at 899. "If the defendant clears this modest hurdle, the

presumption of discrimination vaporizes, . . . and the plaintiff (who retains the ultimate burden of

persuasion on the issue of discriminatory motive throughout) must then prove that the employer's

---

[3] It has been established that an employer, consistent with its business judgment, may eliminate position during a company's downsizing without necessarily violating Title VII, even if the persons is such positions are members of a protected group. Smith, 76 F.3d at 422. See Goldman v. First National Bank, 985 F.2d 1113, 1118-19 (1st Cir. 1993). In addition "insofar as Title VII is concerned, an employer can hire or fire one employee instead of another for any reason, fair or unfair, provided that the employer's choice is not driven by race, gender, pregnancy or some other protected characteristic." Id. See Foster v. Dalton, 71 F.3d 52, 56 (1st Cir. 1995). Since Plaintiff has not offered any direct evidence or proof that she was a victim of gender or pregnancy discrimination, the Court must engage in the burden shifting framework delineated in McDonnell Douglas Corp. v. Green, 411 U.S. 192, 93 S.Ct. 1817 (1973).

AO 72
(Rev 8/82)

proffered justification is a pretext for discrimination." Smith, 76 F.3d at 421. See Mesnick v.

General Electric Co., 950 F.2d 816, 823-24 (1st Cir. 1991); St. Mary's Honor Center v. Hicks, 509

U.S. 502, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

Plaintiffs may also establish a Title VII discrimination case by "a prima facie case, combined

with sufficient evidence to find that the employer's asserted justification is false . . ." Reeves v.

Sanderson Plumbing Products, Inc., __ U.S. __, 120 S.Ct. 2097, 2101, 147 L.Ed.2d 105 (2000). In

Reeves, the Supreme court rejected a "pretext plus" rule, whereby, a discriminatee must show that

the employer's actual reason for taking the adverse action was discriminatory. Id. at 2106.

Defendants in their Motion for Summary Judgment state that "it is uncontested that Mejias

was pregnant when she was laid off by BBII. It is also undisputed that Mejias had performed her job

at an acceptable level.[4] As such, the first three (3) elements of the prima facie case are met." (Docket

No. 17). However, Defendants allege that "Mejias fails to prove her fourth element of the prima facie

case. There is no evidence that BBII undertook the reduction in force in a manner that was either not

gender neutral or that it retained employees of the opposite gender in the same position," thus, failing

to establish a prima facie case. (Docket No. 17). Defendant further points out that the Plaintiff was

not replaced but that her position was eliminated and other employees were assigned her duties.

(Docket No. 17).

Examining the record and drawing all inferences in favor of Plaintiffs, as required under a

summary judgment analysis, the Court finds that Mejias has established a prima facie case of

---

[4] According to Defendants' Statement of Uncontested Material Facts, Plaintiff "had the experience in the Department, good performance throughout the years, and the preparation necessary to do any work within accounting." (Docket No. 17).

AO 72
(Rev 8/82)

discrimination on the basis of gender and pregnancy.[5] <u>Vega-Rodriguez</u>, 110 F.3d at 178.  In order to

satisfy the fourth prong Plaintiff must show either that she was replaced by an individual who was not

a member of the protected class, or that a comparable non-protected person was treated better.  <u>See</u>

<u>Davidson v. Franciscan Health System, Ohio Valley</u>, 82 F.Supp.2d 768, 772 (S.D. Ohio 2000).

Plaintiff argues that there is enough evidence to establish that when Plaintiff took medical leave, she

was replaced; the duties of the General Accounting Supervisor, were mainly absorbed by the

---

[5] Defendants filed a motion to Strike on March 15, 2000, alleging "that the documents attached to Plaintiffs' statement of facts particularly the statement under penalty of perjury, fail procedurally and substantively to create triable issues of material facts." (Docket No. 23).  In addition, Defendants argue that "Mejias' statement is mainly predicated on inadmissible hearsay, speculative and conclusory allegations and Plaintiffs' opposition documents are replete of inadmissible conclusions and counsel's arguments, plus inaccurate legal contentions."  Docket No. 23).  The Court rules as follows:

(1) Paragraph II(11): Denied in Part and Granted in Part.  Plaintiffs statements are not supported by the proposed exhibit, however, determinations of credibility pertaining to the statements found in the deposition of Julio González and Mayra Mejias are best for the jury to decide.

(2) Paragraph II(14): Denied.

(3) Paragraph II(15): The Court finds that this statement is argumentative.  According to Mayra Mejias' deposition of August 6, 1998

    Q    Did you know that at the time Neptune Packing shut operations in Mayaguez, he was also the treasurer of the Puerto Rico corporation?

    A    I did not know that.  I knew nothing about Neptune Packing.  I worked for Bumble Bee.

    Q    And since you didn't know anything about Neptune Packing, you really didn't know anything the scope of his [Emigdio Delestre's] duties in Neptune Packing, isn't that right?

    A    Exactly, it is the same industry, but two completely difference types of companies.

(4) Paragraph III(1): Granted.  The record does not support the conclusion that Plaintiff was in charge of the whole Accounting Department.

(5) Paragraph III(3, 4, 5): Denied.  These are issues involving credibility that are best for the jury to decide.

(6) Paragraph III(6): Denied.  The questions of credibility are best for the jury to decide.

(7) Paragraph III(8, 9): Granted.  These assertions are overbroad.  For example, Plaintiff in her deposition describes the number of times she took over Emigdio Delestre's job as sporadic.  (Docket No. 23, exhibit 3, p. 49).

(8): Paragraph III(10, 12 , 13): Granted.  The statements are unsupported by the record.

10

AO 72
(Rev 8/82)

Accounting Manager; and a few others were absorbed by the Senior Accountant and the Secretary. (Docket No. 17, Defendants' Statement of Uncontested Material Facts No. 21).

Plaintiff may also "satisfy the fourth prong of her prima facie case simply by showing that the employer had a continued need for 'someone to perform the same work after [Plaintiff] left.'" Cumpiano, 902 F.2d at 155 (citing Lipsett, 864 F.2d at 899). In addition, "[w]hen an employer defends an employment discrimination case on the ground of position elimination, the position may not, like a Dali painting, fade from one image to another only for the first image to reemerge at the blink of an eye." Smith, 76 F.3d at 423. Here, the record indicates that the duties and responsibilities of Mejias' occupation were assumed mainly by Mr. Delestre and other employees of the company. (Docket No. 17, Defendants' Statement of Uncontested Facts No. 21) (emphasis added).

Plaintiff was promoted to General Accounting Supervisor on June 1993, part of her duties as Supervisor were to oversee the general accounting area, accounts payable, raw fish inventory and accounts receivable. (Docket No. 23; Exh,. 4 p. 59). In addition, Plaintiff had the responsibility of evaluating the work of the employees who worked in the General Accounting section.[6] (Docket No. 23; Exh. 2, p. 33-34). These are all very significant functions that were assumed almost in their entirety by Mr. Delestre. (Docket No. 17, Defendants' Statement of Uncontested Facts). The evidence shows that there was a continued need by BBII to have Plaintiff's duties performed, therefore, the Court concludes that Plaintiff has satisfied the fourth prong in the McDonnell Douglas burden shifting framework.

As previously mentioned, another way Plaintiff can prove the fourth prong of her prima facie

---

[6] Ms. Mejias had the responsibility of evaluating the work of the following employees: Iris Sánchez (Accountant on Raw Fish Inventory), Carmen Vega (Accountant on Accounts Payable) and Milagros Soto (Accountant on Accounts Receivable). (Docket No. 23; Exh. 3, p. 70-71).

11

case is by providing evidence that shows that pregnant employees are treated differently from non-pregnant employees who are otherwise similarly situated. Based on the totality of the evidence, again examining the matter in the light most favorable to the nonmoving party, the Court finds that Plaintiff has also satisfied the fourth prong of her prima facie case. According to Defendants' Statements of Uncontested Facts the employees laid off by BBII included males that were not on medical leave and females who were not pregnant. (Docket No. 17; Exh. 1, p. 27-28). The decision of which positions were going to be eliminated during the <u>first</u> determination was taken by José Ramos and was later approved by Evan Metropolous, an officer from International Home Products. (Docket No. 28; Exh. 4, p.14-18). However, there is no written documentation of the process of evaluation and decision making that took place. (Docket No. 28, Exh. 4, p. 19, Exh. 3, p. 99). Further, although José Toro had contemplated downsizing the company, Plaintiff's supervisory position was not to be eliminated on the <u>first</u> general lay off. (Docket No. 30; Exh. 4 p. 18, 21). Subsequently, after Metropolous took a tour through the Accounting Department, he determined that another three positions had to be eliminated. (Docket No. 28; Exh. p. 11-21). The decision of which additional employees were going to be terminated was taken by Co-defendant Ramos. (Docket No. 28; Exh. 4, p. 11-21). When the additional three persons to be laid off were chosen on BBII, Mejias' pregnancy was already known, as well as her medical pregnancy history. (Docket No. 28; Exh. 3, p. 95-99).

The two positions eliminated in the Accounting Department were Milagros Soto, a woman with children and Mayra Mejias then pregnant with twins. (Docket No. 28, Exh. 2, p. 34-35). Defendants in their motion to strike argue that since Milagros Soto was not "similarly situated" to Mejias, said contested fact should be stricken from the record. (Docket No. 23). However, this Court finds that although Nitza Colon was not pregnant at the time of her termination, the record

12

suggests that both Mrs. Colon and Mejias were similarly situated.[7]  Assuming arguendo, Defendant is correct, the facts show that the two additional positions to be eliminated by David Ramos, besides Plaintiff's position, were not really eliminated. (Docket No. 38; Exh. 1; Exh. 2, p. 34-35).  These two women, although not from the Accounting department, "were sent back to the production section where they came to help in data entry in the accounting department." (Docket No. 38, Exh. 2, p. 34-35).  In addition these two women were not married or had small children at the time. (Docket No. 38, Exh. 2, p. 34-35).[8]  Therefore, it can be concluded that based on the evidence on the record pregnant employees were treated differently from non-pregnant employees.

        "Once a prima facie showing has been established, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. Ruiz, 54 F.Supp.2d at 109.  See Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996); McDonnell Douglas, 411 U.S. at 802-805, 93 S.Ct. at 1817.  Defendants have articulated said reason asserting that because

---

[7] Defendant's Motion to Strike alleges that since there in evidence on the record that Nitza Colon and Mayra Mejias were not similarly situated, the statement should be stricken. (Docket No. 23).  The Court finds that they were similarly situated.  Plaintiff meets the "same supervisor test" enunciated in Mitchell v. Toledo Hospital, 964 F.2d 577, 583 (6th Cir. 1992) ("[T]o be deemed 'similarly situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.").  Both women were given supervisory responsibilities, were Senior Accountants, had the same training and experience and reported to the same Accounting Manager at the time, Elsie Pastor. (Docket No. 30, exhibit 3, pages 25, 26, 32, 33, 37, 51, 53). Therefore, Defendant's Motion to Strike as to Plaintiff's Statement of Fact Paragraph II(17) is Denied.

[8] The only man in the Accounting Department that was terminated was the buyer of the Purchase section, and the decision to eliminate his position was taken the first time a determination was made to lay off employees. (Docket No. 38; Exh. 3, p. 95; Exh. 4, p. 18).

13

> Bumble Bee underwent financial hardship prior to reducing its force
> and laying off Mejias. During 1997, the Company filed for
> bankruptcy and International Home Foods bought its operations.
> In order to save BBII from its financial difficulties, the management
> decided that all its plants would undergo a cost containment and
> reduction in force strategy at all levels.

(Docket No. 17). In addition, Defendants aver that BBII implemented a reduction in force in Puerto

Rico, because "the higher management understood that to reach the economic goals which had been

set by BBII needed to eliminate more positions." (Docket No. 17). Since, "[t]he production of such

a nondiscriminatory reason dispels the presumption of improper discrimination," "Plaintiff must be

afforded an opportunity to show that the employer's reason was in fact a pretext or sham." Ruiz v.

Caribbean Restaurants, Inc., 54 F.Supp.2d 97, 104 (D.P.R. 1999) (citing King v. Town of Hanover,

116 F.3d 965, 968 (1st Cir. 1997)).

In response to Mejias establishing her prima facie case, BBII has nullified it by articulating

valid nondiscriminatory reasons for the actions taken against Plaintiff. Plaintiff are still able to escape

summary judgment if they can show the reasons articulated by BBII were but a pretext or a sham, for

the employer's real motive of pregnancy discrimination. Medina-Muñoz v. R.J. Reynolds Tobacco

Co., 896 F.2s 5, 9 (1st Cir. 1990).

> "In this final round of shifting burdens, it is up to the plaintiff,
> unassisted by the original presumption, to show that the employer's
> stated reason 'was but a pretext for [pregnancy] discrimination.' . .
> . To achieve this plateau, [a pregnancy discrimination] plaintiff must
> do more than simply refute or cast doubt on the company's
> rationale for the adverse action. The plaintiff must also show a
> discriminatory animus based on [pregnancy]. . . . Generally
> speaking, the principles discussed above abide at the summary
> judgment stage. Most pertinent for our purposes, it remains true
> that when, as here, the employer has articulated a presumptively
> legitimate reason for discharging an employee, the latter must
> elucidate specific facts which would enable a jury to find that the

14

reason given was not only a sham, but a sham intended to cover up
the employer' real motive: [pregnancy] discrimination."

Ruiz, 54 F.Supp.2d at 113 (citing Medina-Munoz, 896 F.2d at 9).  See Morgan, 901 F.2d at 191

(Contesting the factual underpinning or objective veracity of reasons for the employment decision "by

the employer is insufficient, without more to present a jury question.").  Id.  Thus, Plaintiff "must

introduce sufficient evidence to support two findings: (1) that the employer's articulated reason for

[the adverse employment action against] the plaintiff is a pretext, and (2) that the true reason is

discriminatory."  Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 674 (1st Cir. 1996) (quoting Udo v.

Tomes, 54 F.3d 9, 13 (1st Cir. 1995)).  As previously stated, the Plaintiff retains the burden of

persuasion throughout the entire proceedings.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 507-12,

113 S.Ct. at 2747-750;  Carey v. Mt. Desert Island Hosp., 156 F.3d at 31.

        "[T]he issue [of pretext] is not whether [BBII's] reasons to fire [Mejias] were real, but merely

whether the decisionmakers [] believed them to be real."  Mulero-Rodríguez, 98 F.3d at 674.  "The

First Circuit has stated repeatedly that Courts will not assume the role of super personnel departments

to assess the merits or even the rationality of non discriminatory business reasons."  Maldonado-

Maldonado v. Pantasia Mfg. Corp., 983 F.Supp. 58, 65 (D.P.R. 1997) (citations omitted).

        In Smith, the court stated that

        [A] position elimination defense is not defeated merely because
        another employee, already on the payroll, is designated to carry out
        some or all of the fired employee's duties in addition to his own, or
        because those duties are otherwise reallocated within the existing
        work force. (citations omitted).  The elimination of a position
        signifies the employer's belief that it can get by with one less helper;
        it does not necessarily convey a belief the work the employee had
        been doing was superfluous and need not be performed at all.

Smith, 76 F.3d at 423.  However, "[w]hether or not trimming the fat from a company's

organizational chart is a prudent practice in a particular business environment, the employer's

decision to eliminate specific positions must not be tainted by a discriminatory animus." Id. at 423.

Therefore, "an employer who selectively cleans house cannot hide behind convenient euphemisms

such as 'downsizing' or 'streamlining.'" Id.

　　　　Viewing the totality of the evidence on this issue and drawing all inferences in favor of

Plaintiff under the standards set forth for summary judgment, the Court finds that the evidence

presented by the parties is sufficient to make out a jury question as to pretext and discriminatory

animus. For example, within the prima facie analysis, the following facts when examined together

may create an inference of discrimination and/or an issue of "motive and intent" for the jury to

ultimately decide: (1) the fact that there is no written documentation of the process of evaluation and

decision making (objective or subjective) that took place in order to determine which employees were

going to be terminated; (2) the fact that Plaintiff's supervisory position was not to be eliminated on

the first determination to lay off employees; (3) the fact that Mejias' pregnancy was already known, as

well as her medical complications when the decision to terminate her employment was made; and (4)

the fact that immediately after Plaintiff called her supervisor to inform him that her physician had

extended her rest until August 10, 1997, about a half-an-hour later, Plaintiff was notified that her

position had been terminated. (Docket No. 1) (Docket No. 1; Docket No. 28; Exh. 3, p. 95-99, Exh.

4 p. 18, 19, 21). Based on the above, the Court finds that there are genuine issues of fact as to

whether Plaintiff's termination was a genuine business decision of downsizing, pretextual or a sham to

disguise discrimination.[9] Therefore, Defendants' Motion for Summary Judgment on this issue is

---

[9] The Parties are reminded that "the court must review the record as a whole." Reeves, 120 S.Ct. at 2110. Further, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Id.

AO 72
(Rev 8/82)

DENIED.

**B. The Family Medical Leave Act**

Congress passed the FMLA in 1993 "to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. § 2601(b)(2). The FMLA applies to any man or woman who was worked at least 1250 hours a year at a firm employing 50 or more employees at least 20 weeks of the year. See 29 U.S.C. § 2611(2), (4) (defining "eligible employee"). Neither party disputes that Mejias qualifies as an employee under the FMLA and that BBII is an eligible employer.

Pursuant to the FMLA,

> [A]n eligible employee is entitled to a total of 12 weeks of leave during any 12-month period for one or more of the following:
> (A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.
> (B) Because of the placement of a son or daughter of the employee for adoption or foster care.
> (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.
> (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612. The FMLA allows for a party to commence a cause of action when violations of the act, described in 29 U.S.C. § 2615, take place. The following are the acts or violations addressed in 29 U.S.C. § 2615:

---

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, L.Ed.2d 202 (1986). Thus, based on the above mentioned criteria and the four facts enumerated above, the Court finds that Defendants' motion for summary judgment must be denied.

17

(a) Interference with rights

    (1) Exercise of rights

    It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

    (2) Discrimination

    It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

(b) Interference with proceedings or inquires

    Is shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual-

    (1) has filed any charge, or has instituted or cause to be instituted any proceedings, under or related to this subchapter;

    (2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or

    (3) has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this subchapter.

29 U.S.C. § 2615. The FMLA defines "a 'serious health condition' as any physical or mental condition that involves inpatient care or continuing treatment by a health care provider." 29 U.S.C. § 2611(11). In addition, under the FMLA, complications related to pregnancy figure among the examples of serious health conditions given in the Senate Report accompanying the FMLA.[10] See H.R. Rep. No. 8(I), 103d Cong.,1st Sess., (1993).

The First Circuit Court of Appeals has adopted the view that "when there is no direct

---

[10] A pertinent section of the legislative history of the FMLA, states that:
Examples of serious health conditions include but are not limited to heart attacks, heart conditions requiring heart bypass or valve operations, most cancers, back conditions requiring extensive therapy or surgical procedures, strokes, severe respiratory conditions, spinal injuries, appendicitis, pneumonia, emphysema, severe arthritis, severe nervous disorders, injuries caused by serious accidents on or off the job, ongoing pregnancy, miscarriages, complications or illnesses related to pregnancy, such as severe morning sickness, the need for prenatal care, childbirth and recovery from childbirth. H.R. Rep. No. 8(I), 103d Cong., 1st Sess., (1993) (emphasis ours).

18

evidence of discrimination, the <u>McDonnell Douglas</u> burden-shifting framework applies to claims that

an employee was discriminated against for availing himself of FMLA protected rights."[11] <u>Hodgens v.</u>

<u>General Dymanics Corp.</u>, 144 F.3d 151, 160 (1st Cir. 1998).    As previously stated, "[u]nder that

framework, a plaintiff employee must carry the initial burden of coming forward with sufficient

evidence to establish a prima facie case of discrimination or retaliation." <u>Id.</u> "If he does so, then the

burden shifts to the employer 'to articulate some legitimate nondiscriminatory reason for the

employee's [termination],' sufficient to raise a genuine issue of material fact as to whether it

discriminated against the employee." <u>Id.</u> (citing <u>Burdine</u>, 450 U.S. at 255).   "If the employer's

evidence creates a genuine issue of material fact, the presumption of discrimination drops from the

case, and the plaintiff retains the ultimate burden of showing that the employer's stated reason for

terminating him was in fact a pretext for retaliating against him for taking taken protected FMLA

leave." <u>Hodgens</u>, 144 F.3d at 160. <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802, 93 S.Ct. 1817.

Following the <u>McDonnell Douglas</u> burden shifting framework, "in order to establish a prima

facie case for a FMLA violation, a plaintiff must show that (1) [she] is protected under the Act; (2)

[she] suffered an adverse employment decision; and (3) either [she] was treated less favorably than an

employee who had not requested FMLA leave or the adverse decision was made because of [her]

request for leave." <u>Watkins v. J & S Oil Co</u>, 164 F.3d 55 (1st Cir. 1998). <u>See</u> <u>Oswalt v. Sara Lee</u>

<u>Corp.</u>, 889 F.Supp 253, 259 (N.D. Miss. 1995); <u>aff'd</u>, 74 F.3d 91 (5th Cir. 1996).

---

[11] Plaintiffs assert that Mejías "knows" that she was terminated from her employment because of her pregnancy. (Docket No. 28, paragraph VII(2)). Defendants in their Motion to Strike request the Court to strike Plaintiffs' statement of material facts paragraph VII(2). The Court grants such request. The Court finds that these are credibility issues for the jury to decide. Since there is no evidence corroborating such knowledge, therefore, it is speculative. In addition, Defendants seek to strike Plaintiffs statement of material facts paragraphs VII (3-8) and VIII(1-7; 9-12). The Court finds that Defendants' Motion to Strike as to Paragraphs VII(3-8) and VIII(1-7; 9-12) is hereby Denied.

19

Defendants contend that "[Plaintiff] does not tie her lay off with the FMLA dispositions" and that Plaintiff has failed to "identify the reasons why she thinks she is entitled to a remedy under the Act," and thus, her claim under the FMLA should be dismissed. (Docket No. 17). However, Plaintiffs claim that the importance of bringing forth Mayra Mejias' rights under the FMLA is to show that Defendants eliminated her position in <u>anticipation</u> to Plaintiff's entitlement to a prolonged medical leave based on coverage under the Act. (Docket No. 30) (emphasis added). Therefore, an assessment should be made as to Plaintiff's coverage under the act.

The Court finds that Plaintiff satisfies the first prong of the burden shifting framework. First, she is an employee who is unable to work due to a serious health condition. As previously stated, the FMLA applies to employees who suffer complications or illnesses related to pregnancy as a serious health condition. According to the facts on the record, as a result of her multiple pregnancy on July 29, 1997, Plaintiff suffered vaginal bleeding while she was working at BBII. (Docket No. 17; Exh. 1). Plaintiff's obstetrician, after she received medical attention, ordered her to rest until August 6, 1997. (Docket No. 28; Exh. 1). On July 30, 1997, after a second episode of vaginal bleeding she was hospitalized at the Bella Vista Hospital. (Docket No. 28; Exh. 1). After a second evaluation Mejias' doctor ordered her resting period extended because of complications with her pregnancy. (Docket No.28; Exh. 1). Based on the totality of the evidence the Court finds that Plaintiff is a protected person under the FMLA because of her medical complications with her pregnancy being covered by the Act.

The second prong has already been admitted as satisfied by Defendants. (Docket No. 17). Defendants admit that Mejias suffered an adverse employment decision when she was discharged from BBII. (Docket No. 17). Therefore, the only step left for Plaintiff to prove in order to establish

20

her prima facie case is that "either [she] was treated less favorably than an employee who had not requested FMLA leave or the adverse decision was made because of [her] request for leave." Watkins v. J & S Oil Co, 164 F.3d 55 (1st Cir. 1998). The record shows that when Plaintiff was terminated from her employment at BBII on August 1997, Plaintiff was fifteen weeks pregnant with twins. (Docket No. 28; Exh. 1, p. 8). Plaintiff and her husband had undergone fertility treatments in order for Plaintiff to conceive. (Docket No. 28; Exh. 1 ; Exh. 3, p. 96). Her pregnancy was known to her peers and employers. (Docket No. 28; Exh. 1, p. 9).

After her second episode of vaginal bleeding and being hospitalized on June 30, 1997, she informed her supervisor David Ramos during a phone call of her medical complications and of her physician's order to remain in bed until August 6, 1997. (Docket No. 28; Exh. 1). Co-defendant Ramos did not then disclose to Plaintiff of any decision or intention to terminate her position. (Docket No 28; Exh. 1). A medical rest certificate was delivered to BBII by Plaintiff's husband, Co-plaintiff Luis Enrique Mañan. (Docket No. 28; Exh. 1). After a second evaluation of Plaintiff's condition by her physician, Plaintiff was ordered to extend her resting period until Monday, August 10, 1997. (Docket No. 28; Exh. 1). On August 7, 1997, Plaintiff telephoned her supervisor, Co-defendant Ramos, to inform him of the physician ordered extension of the resting period and that she would return to work on August 10, 1997. (Docket No. 28; Exh. 1). Approximately half an hour after Plaintiff's conversation with Mr. David Ramos, José A. Toro, BBII's General Manager, together with Mr. Ramos via telephone conference informed Plaintiff that her position was terminated. (Docket No. 28; Exh. 1; Exh 3, p. 110-11).

Further, although José Toro had contemplated downsizing the company, Plaintiff's supervisory position was not to be eliminated when the first lay off was decided. (Docket No. 30;

21

Exh. 4 p. 18, 21). Plaintiff's supervisory position was eliminated by David Ramos after a second

further lay off was planned. (Docket No. 30, exhibit 4, page 18, 21). However, as stated

heretobefore, there is no documentation or evidence regarding the process and criteria used in

arriving at the decision to terminate Plaintiff. (Docket No. 28, exhibit 4, p. 14-18). When Co-

defendant Ramos informed Mejias of the decision to terminate her employment, Plaintiff's medical

complications were known, as well as the extent of the period of absence of Plaintiff from work on

medical leave. (Docket No. 28; Exh. 3, p. 98-99). Based on the above evidence, the Court finds that

Plaintiff has proven a prima facie case.

Plaintiffs have demonstrated a prima facie case, therefore, the burden then shifts to Defendants

to articulate a legitimate, nondiscriminatory reason for Plaintiff's layoff. See McDonnell Douglas,

411 U.S. 792, 93 S.Ct. 1817. As previously stated, Defendant has articulated said reason asserting

that because "Bumble Bee underwent financial hardship prior to reducing its force and laying off

Mejias. During 1997, the Company filed for bankruptcy and International Home Foods bought its

operations. In order to save BBII from its financial difficulties, the management decided that all its

plants would undergo a cost containment and reduction in force strategy at all levels." (Docket No.

17).

Plaintiffs must now show the reasons articulated by BBII were but a pretext or a sham, for the

employer's real motive of pregnancy discrimination. Medina-Muñoz v. R.J. Reynolds Tobacco Co.,

896 F.2s 5, 9 (1ˢᵗ Cir. 1990). As previously stated, the fact that there is no written documentation of

the process of evaluation and decision making for the employees' termination; initially Plaintiff's

position was not to be eliminated; Plaintiff's pregnancy and medical problems with it were already

known when the termination decision was made; and about a half-an-hour later after Plaintiff

AO 72
(Rev 8/82)

informed BBII that she would be taking time off, Plaintiff was told that her position had been

terminated; all raise issues as of pretext and/or of "motive and intent." (Docket No. 1) (Docket No.

1; Docket No. 28; Exh. 3, p. 95-99, Exh. 4 p. 18, 19, 21). Based on the above, the Court finds that

there are genuine issues of fact as to whether Plaintiff's termination was pretextual or a sham.

Consequently, Defendants' Motion for Summary Judgment on this issue is **DENIED**.

## C. Individual Liability Under Title VII and Puerto Rico Anti-discrimination Laws

### 1. Individual Liability Under Title VII

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., prohibits

any employer, employment agency, or labor organization from engaging in unlawful employment

practices based upon an individual's race, color religion, sex, or national origin. 42 U.S.C. § 2000e.

Specifically, the term employer refers to a person engaged in an industry affecting commerce,

employing fifteen (15) or more employees for twenty (20) or more weeks in the current preceding

calendar year from the date of the alleged discriminatory act. Defendants assert that the claim against

them in their personal capacity should be dismissed, because Title VII does not allow a cause of

action against them in their individual capacity. (Docket No.17).

This Court has recently addressed the issue as follows:

> "First, the Court agrees that the ADEA does not provide for the
> imposition of individual liability. The First Circuit Court of Appeals
> and the Supreme Court have yet to decide this issue of individual
> liability of supervisors. See e.g. Serapion v. Martinez, 119 F.3d
> 982, 992 (1st Cir.1997) (circuit has not resolved issue and declined
> to address); see also Scarfo v. Cabletron Systems, Inc., 54 F.3d
> 931, 951-952 (1st Cir.1995) (similar). This district, and in particular
> the undersigned, has followed the majority of circuits that have
> confronted this issue holding that no personal liability can attach to
> agents and supervisors under Title VII or ADEA. See Acevedo
> Vargas v. Colón, 2 F.Supp.2d 203, 206-207 (D.P.R.1998) (Title

23

VII);  Contreras Bordallo v. Banco Bilbao Vizcaya de P.R., 952 F.Supp. 72 (D.P.R.1997) (Title VII); Rodriguez v. Puerto Rico Marine Management, Inc., 975 F.Supp. 115, 120 (D.P.R.1997) (ADEA)."

Julia v. Janssen, Inc., 92 F.Supp.2d 25, 28-29 (D.P.R. 2000) (citing Diaz v. Antilles Conversion & Export, Inc., 62 F.Supp.2d 463, 465 (D. P.R. 1999) (DRD) (ADEA)). See Vicenty Martell v. Estado Libre Asociado de P.R., 48 F.Supp.2d 81, 87 (D. P.R. 1999) (SEC) (ADA and ADEA); Sifre v. Department of Health, 38 F.Supp.2d 91, 105-106 (D. P.R. 1999) (JP) (ADA and Rehabilitation Act); Figueroa v. Fajardo, 1 F.Supp.2d 117, 120 (D. P.R. 1998) (RLA) (ADA); Rivera Rodriguez v. Police Dep't of P.R., 968 F.Supp. 783, 785-786 (D. P.R. 1997) (JP) (ADA); Moreno v. John Crane, Inc., 963 F.Supp. 72, 76 (D. P.R.1997) (SEC) (ADA); Figueroa v. Mateco, Inc., 939 F.Supp. 106, 107 (D. P.R. 1996) (PG) (ADEA); Hernandez v. Wangen, 938 F.Supp. 1052, 1063-65 (D. P.R. 1996) (HL) (Title VII); Anonymous v. Legal Serv. Corp., 932 F.Supp. 49, 50-51 (D. P.R. 1996) (PG) (ADA); Flamand v. American Int'l Group, Inc., 876 F.Supp. 356, 361-64 (D. P.R. 1994) (HL) (ADEA); see also Meara v. Bennett, 27 F.Supp.2d 288, 290 (D. Mass. 1998) (ADA); Miller v. CBC Companies, Inc., 908 F.Supp. 1054, 1065 (D. N.H.1995) (ADA); see generally Montez v. Romer, 32 F.Supp.2d 1235, 1241 (D. Colo.1999) (Rehabilitation Act); Baublitz v. California, No. C98-0434 CRB, 1998 WL 427444 at * 1 (N.D. Cal. July 27, 1998) (Rehabilitation Act); Huck v. Mega Nursing Servs., Inc., 989 F.Supp. 1462, 1464 (S.D. Fl.1997) (Rehabilitation Act).  Therefore, Plaintiff's claim against under Title VII Defendants in their individual capacity are hereby **DISMISSED**.

### 2. Individual Liability Under Puerto Rico Anti-discrimination Laws

Contrary to what Defendants aver, Plaintiff's claims against Defendants in their individual capacity under Puerto Rico laws do not lack merit.  The Supreme Court of Puerto Rico recently

AO 72
(Rev 8/82)

found that under Puerto Rico Law Nos. 17, 69 and 100, an agent, official, administrator or supervisor

of a business can be found personally liable for violations of the aforementioned laws. <u>Rosario</u>

<u>Toledo v. Distribuidora Kikuet, Inc.</u>, __ D.P.R. __, 2000 WL 943550 at *5 (P.R. 2000). However, a

conjugal partnership's assets will not be found liable for damages caused by one of the partners. <u>Id.</u>

     Consequently, Defendants' Motion for Summary Judgment on the issue of personal liability

under Puerto Rico laws is **DENIED in part** as to the claims against: 1) Jose A. Toro, BBII's Vice-

President and General Manager; and 2) David Ramos López, BBII's Comptroller. In addition,

Defendants' Motion for Summary Judgment on the issue of personal liability is **GRANTED in part**

as to the claims against: 1) Elba Ruiz and the conjugal partnership formed with Jose A. Toro; and 2)

Iraida Granell and the conjugal partnership formed with David Lopez Ramos. Therefore, the personal

liability claims asserted by Plaintiffs against: 1) Elba Ruiz and the conjugal partnership formed with

Jose A. Toro; and 2) Iraida Granell and the conjugal partnership formed with David López Ramos are

hereby **DISMISSED**.

**D. Claims Under the Commonwealth's Constitution**

     Plaintiffs allege in the complaint that BBII breached Article II, § 20 of the Commonwealth's

Constitution. (Docket No. 1). However, in the Motion Summary Judgment, Defendants claim that

since Plaintiffs "have not demonstrated the requisite state action in order to become entitled to relief

under Puerto Rico's Constitution," their constitutional claims must fall. (Docket No. 17). This Court

in <u>Santiago v. Canon U.S.A., Inc.</u>, 1997 WL 188453 *5 (D.P.R.), did not find any "precedent

recognizing a direct private cause of action for sex discrimination under the Puerto Rico

Constitution." In addition, the Court stated that "[n]evertheless, the Supreme Court, in the context of

the right to privacy arising from Art. II sections 1, 8, and 16 of the Constitution of Puerto Rico, has

held that the right to privacy operates *ex propio vigore* between private parties without the need for complementary legislation." Id. at footnote 2. See Colón v. Romero Barceló, 112 D.P.R. 573 (1982); Arroyo v. Rattan Specialties, Inc., 117 D.P.R. 35 (1986). Moreover, although the Puerto Rico Supreme Court has yet to recognize a private cause of action for sex discrimination under the Puerto Rico Constitution, "the Supreme Court might eventually create a cause of action analogous to the one for violation of the right to privacy." Id. The Supreme Court has not created this cause of action, and thus, this federal court refuses to trailblaze causes of actions that should be considered by the Supreme Court of Puerto Rico. "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if- (1) the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). Therefore, for the above mentioned reasons Defendants' Motion for Summary Judgment of Dismissal is **GRANTED WITHOUT PREJUDICE.**

**E. Claims Arising Under Puerto Rico Laws**

Plaintiff has alleged violations of Puerto Rico law arising out of the same nucleus of facts giving rise to her federal claims. Basically, Plaintiff claims a violation of the Maternity Leave Act ("Law 3")[12], P.R. Laws Ann. tit. 29 § 467; Puerto Rico's Wrongful Dismissal Act ("Law 80"), P.R. Laws Ann. tit. 29 § 185; Puerto Rico Employment Discrimination Law, ("Law 100"), P.R. Laws Ann. tit. 29 § 146; and Puerto Rico's Sex Discrimination Statute, ("Law 69"), P.R. Laws Ann. tit. 20 § 185 et seq.

"Previously with regard to Puerto Rico Law 100[13] claims and the

---

[12] Pursuant to the Maternity Leave Act, en employer is prohibited from terminating her employment without just cause. P.R. Laws Ann. tit. 29 § 467.

[13] Pursuant to Puerto Rico Law 100, P.R. Laws Ann., tit. 29 § 148 (1985):
"Any employer who discharges, lays off or discriminates against an employee regarding [her] salary,

accompanying burden-shifting standard thereunder, this Court in
Maldonado-Maldonado v. Pantasia Mfg. Corp., 983 F.Supp. 58,
65-6 (D.P.R. 1997) was guided, as it is now, by the Supreme Court
of Puerto Rico cases such as Narvaez v. Chase Manhattan Bank,
120 P.R. Dec. 731 (1988); Baez Garcia v. Cooper Lab., 120 P.R.
Dec. 145 (1987); Ibanez v. Molinos de P.R., Inc., 114 P.R. Dec. 42
(1983), and the interpretations thereof by the federal courts, such as
Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17,
27-9 (1st Cir. 1998); De Arteaga v. Pall Ultrafine Filtration Corp.,
862 F.2d 940, 941-44 (1st Cir. 1988); Menzel v. Western Auto
Supply Co., 848 F.2d 327, 330-31 (1st Cir. 1988); Dominguez v. Eli
Lilly and Co., 958 F.Supp. 721, 741-45 (D. P.R. 1997)."

Ruiz, 54 F.Supp.2d at 119. Like in a Title VII action, under Law 100 Plaintiff "bears the initial

burden of presenting sufficient, probative evidence that she was discharged without just cause, this

entails showing (a) that she was actively or constructively discharged and (b) the discharge was

without 'just cause.'"[14] Ruiz, 54 F.Supp.2d at 119. See Landrau Romero v. Caribbean Restaurants,

———————————————

wage, pay or remuneration, terms, rank conditions, or privileges of [her] work, or who fails or refuses
to hire or rehire a person, or who limits or classifies [her] employment opportunities, or to affect his
status as employee, on the basis of . . . sex, . . . shall incur civil liability . . . and [] he shall be guilty of
a misdemeanor.".

[14] Law 100 does not provide a definition of "just cause," therefore, Puerto Rico courts have adopted
the guidelines for justifiable dismissals found in Law 80. Baez Garcia v. Cooper Lab., 120 P.R. Dec.
145, 155 (1987); see also P.R. Laws Ann., tit. 29 § 185b (Supp. 1991). Title 29, § 185b:
    "Just cause for the discharge of an employee form an establishment shall be
    understood to be:
    (a)  That the worker indulges in a pattern of improper or disorderly conduct.
    (b)  The attitude of the employee of not performing his work in an efficient manner; or
    of doing it belatedly and negligently or in violation of the standards of quality of the
    product produced or handled by the establishment.
    (c)  The employee's repeated violations of the reasonable rules and regulations
    established for the operation of the establishment, provided a written copy thereof has
    been opportunely furnished to the employee.
    (d)  Full, temporary or partial closing of the operations of the establishment.
    (e)  Technological or reorganization changes as well as changes of style, design or the
    nature of the product made or handled by the establishment, and changes in the
    services rendered to the public.
    (f)  Reductions in employment made necessary by a reduction in the anticipated or

27

Inc., 14 F.Supp.2d 185, 193 (D. P.R. 1998) (citing Eli Lilly And Co. v. Dominguez, 958 F.Supp. 721,

741 (D. P.R. 1997); Borrero-Rentero v. Western Auto Supply Co., 2 F.Supp.2d 197 (D.P.R.1998);

Arthur Young & Co. v. Virgilio Vega III, 94 J.T.S. 75 at 11962, 11972 (1994)). Once Plaintiff

proves her prima facie case, a rebuttable presumption is established. See P.R. Laws Ann., tit. 29 §

148 (1985);[15] see also Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d at 27.

As previously mentioned, "once a Plaintiff establishes a prima facie case under Title VII, the

burden of production shifts to the Defendant but the Plaintiff retains the burden of persuasion

throughout the entire proceedings." Ruiz, 54 F.Supp.2d 97 at 119. See e.g. St. Mary's Honor Ctr. v.

Hicks, 509 U.S. at 507-12, 113 S.Ct. at 2747-750. "Under Law 100, however, upon a satisfactory

showing of a prima facie case by Plaintiff not only does the burden of production shift to the

Defendant but also the burden of persuasion." Ruiz, 54 F.Supp.2d at 116, Alvarez-Fonseca v. Pepsi

Cola of P.R. Bottling Co., 152 F.3d at 27 (citing Ibanez v. Molinos de P.R., Inc., 114 P.R. Dec. 42,

52 (1983)). "Thus, in order to rebut the Law 100 presumption, the employer must prove, by a

preponderance of the evidence, that the challenged action was not motivated by discriminatory

animus." Ruiz, 54 F.Supp.2d at 119-220 (citing Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co.,

152 F.3d at 27-28). "As the Ibañez Court pointed out, Law 100 is much more plaintiff-friendly than

its federal counterpart."[16] Id. at 120 (citing Dominguez v. Eli Lilly and Co., 958 F.Supp. at 744).

---

prevailing volume of production, sales or profits at the time of the discharge."

[15] "Any of the acts mentioned in the preceding sections shall be presumed to have been committed in violation of sections 146-151 of this title, whenever the same shall have been performed without good cause. This presumption shall be of a controvertible character." P.R. Laws Ann., tit. 29 § 148 (1985).

[16] "Consequently, the burden of proof on the ultimate issue of discrimination remains with the plaintiff, as in any other civil case. The plaintiff must prove that, even if the dismissal was justified, the

Plaintiff has shown she was discharged. Now, Defendant must "prove, by a preponderance of the evidence, that the challenged action was not motivated by discriminatory animus." <u>Alvarez-Fonseca</u>, 152 F.3d at 27-28. The Court extrapolates from the analysis previously stated of Title VII pregnancy discrimination cause of action. Defendant claims that they have effectively rebutted the presumption of discrimination by providing a valid "just cause" reason for Plaintiff's discharge.[17] However, the Court concludes that a genuine issue of fact exists as to BBII's rebuttal of the presumption of showing "just cause" for the adverse employment actions taken against Plaintiff. Defendant has thus failed to carry the burden of persuasion that the termination was not motivated by discriminatory animus. Consequently, because Plaintiff has established a genuine issue of fact concerning BBII's valid nondiscriminatory reasons being but a pretext for sexual discrimination, an issue of fact remains with reference to the employer's showing of "just cause" discharge.

The same conclusion must be reached as to the claims asserted by Plaintiff under Puerto Rico Laws No. 3 and 69. Laws No. 3 and 69 causes of action are almost identical to EEOC's guidelines for Title VII discrimination causes of action, that is gender/pregnancy discrimination causes of action. <u>See</u> P.R. Laws Ann. 29 § 467 et seq., 20 § 185 et seq. These local statutes prohibit discrimination, among other factors, on the basis of sex and also require that an employer show that termination was

---

defendant nevertheless violated Law 100 because the dismissal was motivated by discriminatory animus instead of or in addition to the legitimate reasons for dismissal. The Law 100 plaintiff is then in [the] same situation as an ADEA plaintiff after the defendant has articulated a legitimate, nondiscriminatory reason for its actions." <u>Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co.</u>, 152 F.3d at 28.

[17] Defendant has articulated a "just cause" reason for termination asserting that because "Bumble Bee underwent financial hardship prior to reducing its force and laying off Mejias. During 1997, the Company filed for bankruptcy and International Home Foods bought its operations. In order to save BBII from its financial difficulties, the management decided that all its plants would undergo a cost containment and reduction in force strategy at all levels." (Docket No. 17).

29

based on a valid nondiscriminatory reason.  P.R. Laws Ann. tit. 29 § 146, 20 § 185.  The Court has held above that a genuine issue of facts exists as to Plaintiff's claim for pregnancy discrimination.  Therefore, the Court holds likewise, summary judgment is inappropriate as to the alleged violations of Puerto Rico Law Nos. 3 and 69.  P.R. Laws Ann. tit. 29 § 146, 20 § 185.  Defendants' Motion for Summary Judgment as to these issues is hereby **DENIED**.

**V.  CONCLUSION**

Co-defendants Motion for Summary Judgment is hereby **DENIED IN PART, GRANTED IN PART**.  The cause of action brought by Plaintiffs for gender/pregnancy discrimination against Defendants remains before the Court to be adjudicated by a jury.  Plaintiff's claims for individual Title VII liability aga        inst Defendants are **DISMISSED WITH PREJUDICE** for failure to state a cause of action.  Plaintiffs claims for individual Puerto Rico Anti-discrimination laws liability against Defendants are **DISMISSED WITH PREJUDICE** only as to: 1) Iraida Granell and the conjugal partnership formed with David López Ramos; and 2) Elba Ruiz and the conjugal partnership formed with Jose A. Toro.  Defendants' request to dismiss the local claims under Law 100, Law No. 3, Law No. 69 and Law No. 80 are hereby **DENIED**.  Plaintiffs claims under the Commonwealth's Constitution are hereby **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.


October 16, 2000.

_____
**DANIEL R. DOMINGUEZ**
**U.S. District Judge**

30